# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Martin Miguel Barrios Leon, Gustavo Enrique Llanos Miranda, Oscar Herrera Venera, Francisco Ariel Bolanos, Mario Jose Acuna Garcia, Jair Mendoza Montoya, and Eduardo de Jesus Chacin Villarroel<br><br>*Defendant(s)* | Case No. 8:17MJ1654 TGW |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning on an unknown date and continuing through on or about August 24, 2017, while aboard a vessel subject to the jurisdiction of the United States, the defendants, each of whom will be brought into the United States at a point in the Middle District of Florida, committed the following violation:

| *Code Section* | *Offense Description* |
|---|---|
| 46 U.S.C. §§ 70503(a) and 70506(a) and (b) | Conspiracy to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, while aboard a vessel subject to the jurisdiction of the United States. |

This criminal complaint is based on these facts:

See attached affidavit.

✔ Continued on the attached sheet.

*Complainant's signature*

Daniel E. Ward, Special Agent, CGIS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Sept 15, 2017

*Judge's signature*

City and state: Tampa, Florida

THOMAS G. WILSON, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel E. Ward, being duly sworn, depose, and state:

### Introduction and Agent Background

1. I am a Special Agent with the Coast Guard Investigative Service ("CGIS"), and have been employed by CGIS since 2008. Since September of 2016, I have been assigned as a Special Agent to the Operation Panama Express Strike Force. Operation Panama Express is a federal Organized Crime Drug Enforcement Task Force ("OCDETF") investigation being conducted by the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), CGIS, the United States Coast Guard ("USCG"), and state and local law enforcement agencies. Investigations initiated by Operation Panama Express are prosecuted in the Middle District of Florida (Tampa Division). Special Agents assigned to Operation Panama Express currently investigate cocaine smuggling organizations that are responsible for the transportation of cocaine through international waters of the Caribbean Sea and Pacific Ocean via maritime vessels to transshipment locations for later introduction and distribution into the United States.

### Statutory Authority

2. I submit this affidavit in support of a criminal complaint charging that beginning on an unknown date and continuing through on or about August 24, 2017, while aboard a vessel subject to the jurisdiction of the United States, the defendants, MARTIN MIGUEL BARRIOS LEON, GUSTAVO ENRIQUE LLANOS

MIRANDA, OSCAR HERRERA VENERA, FRANCISCO ARIEL BOLANOS, MARIO JOSE ACUNA GARCIA, JAIR MENDOZA MONTOYA, and EDUARDO DE JESUS CHACIN VILLARROEL, each of whom will be brought into the United States at a point in the Middle District of Florida, did knowingly and willfully combine, conspire, and agree with each other and with other persons, to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 46, United States Code, Sections 70503(a) and 70506(a) and (b), and Title 21, United States Code, Section 960(b)(1)(B)(ii).

3. The averments contained in this Affidavit are based on my personal knowledge and/or reliable information related to me by other law enforcement officers with whom I have worked on this investigation. Because of the limited purpose of this Affidavit, however, I have not included each and every fact known to me or other law enforcement agents concerning this investigation. I have included only those facts I believe are necessary to establish probable cause supporting the requested complaint.

## Probable Cause

4. The United States Coast Guard ("USCG") has the authority under 14 U.S.C. § 89 to make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce United States law.

5.  On August 24, 2017, while on routine patrol, the USCG Cutter TAHOMA ("TAHOMA") located a freighter in international waters approximately 200 nautical miles southeast of Jamaica. The freighter was not broadcasting on the automatic identification system ("AIS"), as required for a vessel of its size. Additionally, TAHOMA's crew saw the freighter make course and speed changes inconsistent with other merchant traffic. TAHOMA launched its helicopter to investigate. Once the helicopter flew low near the freighter, the freighter began broadcasting on the AIS under the name FAT CROW.

6.  FAT CROW did not respond to initial radio calls from TAHOMA's helicopter. Ultimately, FAT CROW's master responded that he did not speak English. In response, TAHOMA used a translator to conduct the right of approach questioning. FAT CROW's master claimed Togolese registry for the freighter and reported nine persons onboard. He also claimed that FAT CROW was transporting fuel from Venezuela to Guatemala.

7.  Despite FAT CROW's claim that its purpose was to transport fuel, the USCG suspected that FAT CROW was actually engaged in smuggling, based on the following facts: (i) FAT CROW did not broadcast its identity over AIS until the USCG helicopter approached; (ii) FAT CROW made course and speed changes inconsistent with other merchant traffic; (iii) FAT CROW was travelling on a known smuggling route; and (iv) FAT CROW appeared to have fresh paint and crooked lettering on its hull. Accordingly, TAHOMA requested authority to conduct a full law enforcement boarding of FAT CROW.

8. The U.S. government contacted the Togolese government to confirm or deny FAT CROW's registry, and if confirmed, to grant permission to stop, board, and search the freighter. Initially, the Togolese government could not confirm FAT CROW's registry but stated that, regardless, it had no objection to the United States stopping, boarding, and searching FAT CROW. Subsequently, the Togolese government confirmed FAT CROW's Togolese registration. Approximately two weeks after the interdiction, the Togolese government canceled FAT CROW's Togolese registration. The U.S. Department of State has interpreted the Togolese response as constituting consent to the United States enforcing U.S. law with respect to FAT CROW.

9. Subsequently, TAHOMA dispatched a boarding team on a small boat to FAT CROW. The boarding team found the following nine people aboard FAT CROW: MARTIN MIGUEL BARRIOS LEON, GUSTAVO ENRIQUE LLANOS MIRANDA, OSCAR HERRERA VENERA, FRANCISCO ARIEL BOLANOS, MARIO JOSE ACUNA GARCIA, JAIR MENDOZA MONTOYA, EDUARDO DE JESUS CHACIN VILLARROEL, WALTER AMERICO GARRIDO VARGAS, and LUIS CARLOS GARCIA FLORES. These men are Venezuelan, Colombian, and Peruvian citizens. Defendant LLANOS MIRANDA was previously convicted in the United States for importing cocaine. Defendant ARIEL BOLANOS was previously interdicted by the USCG onboard a ship transporting approximately 2,000 kilograms of cocaine.

10. During the second full day of the boarding, the USCG boarding team found fresh welds around an unaccounted for void inside FAT CROW's forward ballast tank. The boarding team then found a manhole cover providing access to the void. Inside, the boarding team found 75 bales containing approximately 1,862 kilograms of a substance that field-tested positive for cocaine. The wholesale value of this amount of cocaine exceeds $46.5 million. The boarding team also found approximately 260,000 gallons of fuel onboard FAT CROW.

11. In my training and experience, FAT CROW fits the profile of a smuggling vessel capable of operating under the auspices of a merchant vessel carrying legal cargo in an effort to avoid law enforcement detection, which is therefore considered a favorable vehicle for narcotics smuggling operations.

## Conclusion

12. Based upon the foregoing information, I respectfully submit that probable cause exists to believe that the following seven defendants named herein, MARTIN MIGUEL BARRIOS LEON, GUSTAVO ENRIQUE LLANOS MIRANDA, OSCAR HERRERA VENERA, FRANCISCO ARIEL BOLANOS, MARIO JOSE ACUNA GARCIA, JAIR MENDOZA MONTOYA, EDUARDO DE JESUS CHACIN VILLARROEL, while aboard a vessel subject to the jurisdiction of the United States, knowingly and willfully combined, conspired, and agreed with each other and with other persons to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 46, United States Code, Sections 70503(a) and 70506(a) and (b), and Title 21, United States Code, Section 960(b)(1)(B)(ii).

_____
Daniel E. Ward
Special Agent, CGIS

Sworn to before me in Tampa, Florida this 15th day of September, 2017.

_____
THOMAS G. WILSON
United States Magistrate Judge