UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                          CASE NO. 8:17-cr-445-T-24CPT

EDUARDO DE JESUS CHACIN VILLARROEL

**UNITED STATES'S SENTENCING MEMORANDUM**

The United States of America submits this memorandum in opposition to defendant Eduardo De Jesus Chacin Villarroel's objection to the U.S. Sentencing Guidelines calculation in his Presentence Investigation Report ("PSR"), contending that he merits the minor role reduction under U.S.S.G. § 3B1.2.

**I.    BACKGROUND**

    **A.    Procedural Background**

On September 19, 2017, the grand jury indicted the seven defendants in this case on the following two charges: (1) conspiracy to distribute and to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) ("Count One"); and (2) possession with intent to distribute five kilograms or more of a

mixture and substance containing a detectable amount of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a); 18 U.S.C. § 2; and 21 U.S.C. § 960(b)(1)(B)(ii) ("Count Two").   Doc. 51.

Defendants Martin Miguel Barrios Leon ("Barrios Leon"), Eduardo de Jesus Chacin Villarroel ("Chacin Villarroel"), Oscar Herrera Venera ("Herrera Venera"), Mario Jose Acuna Garcia ("Acuna Garcia"), and Francisco Ariel Bolanos ("Ariel Bolanos") pleaded guilty.   Docs. 81, 111.   Defendants Gustavo Enrique Llanos Miranda ("Llanos Miranda") and Jair Mendoza Montoya ("Mendoza Montoya") proceeded to trial.   The jury convicted Llanos Miranda and Mendoza Montoya on both counts.   Docs. 153, 154. The evidence at trial described in great detail the respective roles of the defendants as crewmembers on board the oil tanker FAT CROW and in the drug smuggling scheme.   The following factual background is based upon the trial evidence in this case.

B.   **Factual Background**

In April 2017, two trip organizers in Colombia recruited defendants Ariel Bolanos, Llanos Miranda, Herrera Venera, and four other men to be part of the crew of an oil tanker named FAT CROW.   The four other men included a captain, a first officer, a chief engineer, and an assistant

engineer. FAT CROW's purpose was to smuggle cocaine. Later in April 2017, these seven men traveled from Colombia to the Dominican Republic, where FAT CROW was anchored, to join FAT CROW's crew.

Separately, in the Dominican Republic, another trip organizer recruited defendants Chacin Villarroel and Acuna Garcia to be part of FAT CROW's crew. These two defendants also joined FAT CROW's crew in April 2017.

While FAT CROW was anchored in the Dominican Republic, under the supervision of the chief engineer, defendants Chacin Villarroel and Herrera Venera constructed a hidden compartment in FAT CROW's bow for the purpose of smuggling cocaine. FAT CROW's entire crew knew about the hidden compartment and its purpose.

In early June 2017, FAT CROW's crew sailed the ship to a point approximately 20 miles off the coast of Venezuela, where the crew anchored the ship. The first officer decided to leave the crew in the Dominican Republic and did not travel on the ship to Venezuela. A few days after FAT CROW anchored off the coast of Venezuela, defendants Barrios Leon and Mendoza Montoya rode a small boat from the nearby Venezuelan port out to FAT CROW to join the crew. Barrios Leon replaced the previous captain, and Mendoza Montoya replaced the previous first officer.

FAT CROW remained anchored off the coast of Venezuela from early

June 2017 until on or about August 21, 2017. During that time, a trip organizer visited the ship several times from shore to meet with the entire crew. During these meetings, the crew and the trip organizer negotiated the crew's payment for smuggling the cocaine.

FAT CROW's crew consisted of two tiers of crewmembers: officers and lower-ranking crewmembers. Barrios Leon, Mendoza Montoya, and the chief engineer were the ship's officers. The assistant engineer, Ariel Bolanos, Llanos Miranda, Herrera Venera, Chacin Villarroel, and Acuna Garcia were the lower-ranking crewmembers.

As captain, Barrios Leon was in charge of the entire ship and its crew. He was to be paid approximately $80,000 to $90,000 for the drug trip. As first officer, Mendoza Montoya was second-in-charge of the ship and served as its navigator. He was to be paid approximately $60,000 to $70,000 for the drug trip. The chief engineer was in charge of running the ship's engines and supervising the crewmembers who worked in the engineering room. He was to be paid approximately $80,000 to $90,000 for the drug trip.

The assistant engineer assisted the chief engineer and was to be paid approximately $60,000 to $70,000 for the drug trip. Ariel Bolanos served as the ship's bosun and supervised operation of equipment on the ship's deck. He was to be paid approximately $30,000 to $40,000 for the drug trip.

Llanos Miranda served as the ship's helmsman, in charge of steering the ship. He was to be paid approximately $30,000 to $40,000 for the drug trip. Herrera Venera served as an oiler and welder on the ship, working on machinery in the engine room under the chief engineer's supervision. He was to be paid approximately $30,000 to $40,000 for the drug trip. Chacin Villarroel served as an oiler on the ship, working on machinery in the engine room under the chief engineer's supervision. He was to be paid approximately $30,000 to $40,000 for the drug trip. Acuna Garcia served as the ship's cook. He was to be paid approximately $30,000 to $40,000 for the drug trip.

On or about August 21, 2017, a small boat brought 1,504 kilograms of cocaine to FAT CROW. FAT CROW's entire crew participated in loading the cocaine onto the ship. Some of the crewmembers secured the cocaine in the hidden compartment while others cleaned the ship to remove any trace of cocaine to prevent detection by law enforcement. FAT CROW set sail that same day, intending to deliver the cocaine to a point off the coast of Honduras before continuing to Guatemala to deliver approximately 260,000 gallons of black market Venezuelan diesel fuel that the crew had onloaded while anchored off the coast of Venezuela.

On August 24, 2017, while on routine patrol, the U.S. Coast Guard

("USCG") Cutter TAHOMA ("TAHOMA") detected FAT CROW in international waters approximately 200 nautical miles southeast of Jamaica. FAT CROW did not respond to initial radio calls from TAHOMA. Ultimately, FAT CROW's captain, Barrios Leon, responded that he did not speak English. In response, TAHOMA used a translator to conduct the right of approach questioning. Barrios Leon claimed Togolese registry for the freighter and reported nine persons on board. He also claimed that FAT CROW was transporting fuel from Venezuela to Guatemala.

Based on a variety of observations about FAT CROW, the USCG suspected that FAT CROW was actually engaged in smuggling contraband. Accordingly, TAHOMA requested authority to conduct a full law enforcement boarding of FAT CROW. The U.S. government contacted the Togolese government to confirm or deny FAT CROW's claim of registry, and if confirmed, to grant permission to stop, board, and search the freighter. Initially, the Togolese government could not confirm FAT CROW's registry but stated that, regardless, it had no objection to the United States stopping, boarding, and searching FAT CROW. Subsequently, the Togolese government confirmed FAT CROW's Togolese registration. Following the USCG interdiction of FAT CROW, the Togolese government consented to the United States enforcing U.S. law with respect to

FAT CROW and its crew.

TAHOMA dispatched a boarding team on a small boat to FAT CROW. The boarding team found the following people aboard FAT CROW: Barrios Leon, Llanos Miranda, Herrera Venera, Ariel Bolanos, Acuna Garcia, Mendoza Montoya, Chacin Villarroel, a chief engineer, and an assistant engineer.

During the second full day of the boarding, the USCG boarding team found fresh welds around an unaccounted for void inside FAT CROW's forward ballast tank. The boarding team then found a manhole cover providing access to the void. Inside, the boarding team found 75 bales containing the 1,504 kilograms of cocaine. The wholesale value of this amount of cocaine exceeds $45 million. The boarding team also found approximately 260,000 gallons of black market Venezuelan diesel fuel onboard FAT CROW, which the crew used in part to attempt to provide a legitimate cover for FAT CROW's trip.

## II. CHACIN VILLARROEL DOES NOT MERIT THE MINOR ROLE REDUCTION

### A. Legal Framework

The proponent of a downward adjustment bears the burden of establishing that he merits the adjustment by a preponderance of the evidence. *United States v. De Varon*, 175 F.3d 930, 934 (11th Cir. 1999). As set forth

below, the legal framework concerning mitigating role is found in (1) the U.S. Sentencing Guidelines; (2) *United States v. De Varon* and its progeny; and (3) case law applying the mitigating role analysis in maritime interdiction cases similar to the instant case.

1. U.S. Sentencing Guidelines

Under the U.S. Sentencing Guidelines, a defendant may receive an offense level reduction for having a limited role in the offense. U.S.S.G. § 3B1.2. The defendant may receive a four-level reduction if he was a minimal participant, a two-level reduction if he was a minor participant, or a three-level reduction if he was somewhere in between. *Id.* The adjustment applies to defendants that are "substantially less culpable than the average participant in the criminal activity." *Id.* § 3B1.2 cmt. n.3(A). In particular, the two-level "minor role" reduction applies to a defendant "who is less culpable than most other participants in the criminal activity." *Id.* § 3B1.2 cmt. n.5. The commentary to U.S.S.G. § 3B1.2 explains that determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality of the circumstances analysis. *Id.* § 3B1.2 cmt. n.3(C). The commentary provides the following non-exhaustive list of factors for consideration:

    (i)    the degree to which the defendant understood the scope and structure of the criminal activity;

  (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
  (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
  (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
  (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

### 2. *De Varon* Framework

In the Eleventh Circuit, determining whether a defendant merits a mitigating role reduction involves a two-pronged analysis. First, the court must evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. *De Varon*, 175 F.3d at 934, 940. Second, where the record evidence is sufficient, the district court may also compare the defendant's conduct to that of other participants in the criminal scheme attributed to the defendant. *Id.* at 934, 944.

Concerning the first prong in the *De Varon* analysis, the Eleventh Circuit has explained that a mitigating role reduction for a defendant convicted of conspiracy "only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct *attributed to her*." *Id.* at 941 (emphasis in original). "Otherwise, a defendant could argue that her

9

relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining her role in the offense." *Id.* "A defendant cannot have it both ways." *Id.* Accordingly, "where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.*

Concerning the second prong of the *De Varon* analysis, the Eleventh Circuit has emphasized that "a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants." *Id.* at 944. Instead, "the district court must determine that the defendant was less culpable than *most other participants* in her relevant conduct." *Id.* (emphasis in original). In *De Varon*, the Eleventh Circuit described a helpful example in which three individuals enter a bank intending to rob it. *Id.* (citing *United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir. 1989)). In the example, one defendant stands guard at the bank entrance, another sprays paint on the security camera, and the third gathers money from the teller's cage. *Id.* The court explained that even if one of the participants deserved an aggravating role enhancement, the other participants would not be entitled to a mitigating role reduction. *Id.*; *see also id.* (citing

10

*United States v. Rotolo*, 950 F.2d 70, 71 (1st Cir. 1991)) (recognizing that "one who, say, points a gun at a bank teller and seizes the money is not entitled to a *downward* adjustment simply because someone else in the gang supervised his activities").

To assist in the mitigating role analysis, the Eleventh Circuit has provided a non-exhaustive list of factors to consider in the drug courier context, including the amount of drugs; the fair market value of the drugs; the amount of money the courier was to be paid; whether the courier had any equity interest in the drugs; the courier's role in planning the criminal scheme; and the courier's role in the distribution. *De Varon*, 175 F.3d at 945.

### 3. Application in Maritime Interdiction Cases

The Eleventh Circuit has recently applied the *De Varon* analysis to a maritime interdiction conspiracy case comparable to the instant case, and upheld the district court's decision denying a mitigating role reduction for a crewmember. In *United States v. Herrera-Villarreal*, 665 F. App'x 762 (11th Cir. 2016), the defendant faced the same two charges on which the grand jury here indicted Chacin Villarroel. The district court in the *Herrera-Villarreal* case sentenced the defendant "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at 764. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was

calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.*; *see also United States v. Palma-Meza*, 685 F. App'x 806, 810 n.2 (11th Cir. 2017) ("Because [the mariner's] guideline range was calculated using only the amount of drugs found on the boat on which he served as a crewmember, he did not have a minor role compared to the relevant conduct for which he was held accountable."). The Eleventh Circuit emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Herrera-Villarreal*, 665 F. App'x at 764. The court also pointed out that the defendant presented no evidence demonstrating that he was less culpable than the other crewmembers on the vessel. *Id.* at 764-65.

**B. Analysis**

Chacin Villarroel fails to satisfy his burden to demonstrate that he is entitled to a minor role reduction on either of the two prongs of the *De Varon* analysis.

### 1. First Prong of *De Varon* Analysis

The first prong in the *De Varon* analysis involves evaluating Chacin Villarroel's role in the conduct for which he is being held accountable. *De Varon*, 175 F.3d at 934, 940. The object of the conspiracy to which Chacin Villarroel pleaded guilty, and for which the PSR holds him accountable, was

to transport 1,504 kilograms of cocaine across international waters from Venezuela to Honduras.

Several of the *De Varon* and U.S.S.G. § 3B1.2 factors weigh against finding that Chacin Villarroel had a minor role in this conspiracy. First, Chacin Villarroel helped smuggle an enormous amount of drugs: 1,504 kilograms of cocaine. Indeed, at trial, an experienced DEA agent conservatively estimated that the wholesale value of this amount of cocaine exceeds $45 million. The amount of drugs and their worth show that the trip organizers placed a high level of trust in Chacin Villarroel and his co-defendants. The Eleventh Circuit has recognized that "the amount of drugs in a courier's possession—whether very large or very small—may be the best indication of the magnitude of the courier's participation in the criminal enterprise."[1] *Id.* at. 943. The Eleventh Circuit has routinely upheld denial of the minor role reduction where the amount of drugs was far less than 1,504 kilograms. *See, e.g.*, *United States v. Casas*, 632 F. App'x 1003, 1005 (11th Cir. 2015) (denying minor role reduction where defendant transported three kilograms of methamphetamine); *De Varon*, 175 F.3d at 946 (denying minor role reduction where defendant transported 512.4 grams of heroin).

---

[1] The Eleventh Circuit recently reaffirmed that the amount of drugs the courier possessed is a significant consideration in the minor role analysis, but explained that it cannot be the *only* factor the court considers. *See United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016).

Additionally, the conspiracy constituted an elaborate international drug trafficking scheme that involved smuggling over one and a half tons of cocaine across international waters from Venezuela to Honduras, requiring intervention by the U.S. Coast Guard. Chacin Villarroel's conspiracy was far larger and more complex than others in which the Eleventh Circuit has upheld denial of the minor role reduction for drug traffickers. *See, e.g.*, *Casas*, 632 F. App'x at 1005 (denying minor role reduction for defendant who smuggled three kilograms of methamphetamine in a car from Texas to Florida). Finally, Chacin Villarroel was centrally involved in the core purpose of the conspiracy. He helped build the compartment in which the defendants hid the cocaine. He participated in meetings to negotiate his compensation for the smuggling trip. And he personally helped load the cocaine onto the ship. Based on his participation, Chacin Villarroel knew the scope of the conspiracy.

Furthermore, because Chacin Villarroel's actual conduct was coextensive with his relevant conduct, he cannot have had a minor role compared to his relevant conduct. Although Chacin Villarroel's conspiracy may be part of a larger criminal enterprise, he is not being held accountable for the actions of any such larger enterprise. Thus, he cannot use some larger criminal enterprise to define his role. *De Varon*, 175 F.3d at 941, 947

(explaining that the court should evaluate the defendant's role based on the conspiracy for which he is held accountable, and rejecting the contention that the court should evaluate the defendant's role based on a "far-flung narcotics enterprise that may stretch from the grower, to the manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor"). The criminal conspiracy of which Chacin Villarroel was convicted consisted of seven men transporting 1,504 kilograms of cocaine across international waters. Chacin Villarroel was fully aware of that conspiracy and participated in every key part of it, including building the hidden compartment, negotiating his compensation, and loading the cocaine onto the ship. Thus, he was intimately involved in the central object of the conspiracy of which he is being held accountable.

Finally, as in the *Herrera-Villareal* case, here Chacin Villarroel's offense level is calculated using only the amount of drugs on the vessel. Doc. 61 at ¶¶ 15-25. Thus, his "actual conduct was identical to the relevant conduct attributable to him." *Herrera-Villarreal*, 665 F. Appx at 764; *see also Palma-Meza*, 685 F. App'x at 810 n.2 ("Because [the mariner's] guideline range was calculated using only the amount of drugs found on the boat on which he served as a crewmember, he did not have a minor role compared to the relevant conduct for which he was held accountable."). Accordingly, because

15

Chacin Villarroel did not have a minor role compared to his relevant conduct, he cannot carry his burden on the first prong of the *De Varon* analysis.

### 2. Second Prong of the *De Varon* Analysis

Even if Chacin Villarroel could satisfy his burden on the first prong of the *De Varon* analysis—which he cannot—he fails to do so on the second prong. The second prong of the *De Varon* analysis involves comparing Chacin Villarroel's role in the conspiracy to that of other participants in the criminal scheme attributed to him. *De Varon*, 175 F.3d at 934, 944. The crux of the analysis is whether Chacin Villarroel is "substantially less culpable than the average participant" in the conspiracy. U.S.S.G. § 3B1.2 cmt. n.3(A). Put another way, the issue is whether he is "less culpable than *most other participants*" in the conspiracy. *De Varon*, 175 F.3d at 944 (emphasis in original); U.S.S.G. § 3B1.2 cmt. n.5.

As discussed above, the conspiracy for which Chacin Villarroel is being held accountable consisted of seven crewmembers on a ship transporting 1,504 kilograms of cocaine across international waters. At trial, cooperating witnesses identified several other members of this conspiracy, including at least three trip organizers and several men who delivered the cocaine to the ship in the small boat. Chacin Villarroel argues that the trip organizers and FAT CROW's officers are more culpable than he is. But just because these

people may merit an offense level enhancement for their roles does not mean that Chacin Villarroel merits a mitigating role reduction. *See De Varon*, 175 F.3d at 944. Additionally, the mere fact that someone else hired Chacin Villarroel to smuggle the drugs, without more information about this person's role, "does not compel the conclusion that [the organizer] was sufficiently more culpable" than Chacin Villarroel. *Id.* at. 946; *see also id.* at 944 (citing *Rotolo*, 950 F.2d at 71) (recognizing that a defendant is not entitled to a mitigating role reduction merely because someone else in the criminal enterprise supervised his activities). The key issue is whether Chacin Villarroel is "substantially less culpable than the average participant" the conspiracy. U.S.S.G. § 3B1.2 cmt. He is not.

The ship's officers, captain Barrios Leon and first officer Mendoza Montoya, had significantly more responsibility for running the ship than Chacin Villarroel; indeed, the U.S. Sentencing Guidelines provide an enhancement for their special skills. But their participation in the drug smuggling conspiracy is not that distinguishable from Chacin Villarroel's. Barrios Leon and Mendoza Montoya managed and navigated the ship, and accordingly were to be paid more money than the rest of the crew. But the cooperating witnesses testified at trial that all of the crewmembers participated in meetings with the trip organizers to negotiate their compensation and that

17

all of the crewmembers participated in loading the cocaine onto the ship. That activity is the heart of this conspiracy, and all of FAT CROW's crewmembers, from the captain down to the cook, participated. Chacin Villarroel negotiated his compensation and loaded the cocaine, just as all the other crewmembers did, in addition to building the hidden compartment. Accordingly, he is not "substantially less culpable than the average participant" in this conspiracy.

## III. CONCLUSION

For the reasons set forth above, the Court should deny defendant Eduardo de Jesus Chacin Villarroel's objection seeking a mitigating role reduction.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: /s/ Taylor G. Stout
Taylor G. Stout
Assistant United States Attorney
United States Attorney No. 171
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: taylor.stout@usdoj.gov

**U.S. v. Eduardo de Jesus Chacin Villarroel  Case No. 8:17-cr-445-T-24CPT**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 28, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Irina Hughes, Esquire

    */s/ Taylor G. Stout*
    Taylor G. Stout
    Assistant United States Attorney
    United States Attorney No. 171
    400 N. Tampa Street, Suite 3200
    Tampa, Florida 33602-4798
    Telephone:  (813) 274-6000
    Facsimile:  (813) 274-6358
    E-mail:  taylor.stout@usdoj.gov